Philip Knab, a Minor, by Dolores Knab, His Mother and Next Friend, Plaintiff-Appellant, v. Alden's Irving Park, Inc., a Corporation, Defendant-Appellee.

Alden's Irving Park, Inc., a Corporation, Third Party Plaintiff, v. Brookhaven Textiles, Inc., a Corporation, Herman and Daniel Goldberg d/b/a Collins Mfg. Company, and Jefferson Mills, Inc., a Corporation, Third Party Defendants.

Herman and Daniel Goldberg d/b/a Collins Mfg. Company, Counter Plaintiff, v. Brookhaven Textiles, Inc., a Corporation, and Jefferson Mills, Inc., a Corporation, Counter Defendants.

Gen. Nos. 48,975, 48,976.

First District, Fourth Division.

May 13, 1964.

Meyer Z. Grant, Samuel E. Bublick, Robert A. Sprecher and Frank A. Karaba, all of Chicago, for appellant.

■

Joseph A. Bailey, of Chicago (Harry J. O'Kane and Charles D. Snewind, of counsel), for Alden's Irving Park, Inc., Hubbard, Hubbard, O'Brien & Hall, of Chicago, for Brookhaven Textiles, Inc., J. V. Schaffengger, of Chicago (James P. Chapman, of counsel), for Herman and Daniel Goldberg.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This suit was brought by Philip Knab, a minor, by Dolores Knab, his mother and next friend. Philip Knab will hereafter be referred to as "Philip." The defendant in the suit was Alden's Irving Park, Inc., and will hereafter be referred to as "Alden's." The suit was brought on an implied warranty. The jury returned a verdict finding the issues in favor of defendant and a judgment was entered in the Circuit Court of Cook County on May 10, 1962, on the verdict. Philip's post-trial motion was denied on June 25, 1962, and from the judgment and order this appeal is taken.

Philip's theory of the case is that the verdict is against the manifest weight of the evidence and that there was error in the instructions and in the evidence introduced over the plaintiff's objection, and in prejudicial remarks of Alden's counsel, and in the trial court's refusal to permit Philip to testify.

The amended complaint alleged that on May 12, 1954 Philip's mother, Dolores Knab, purchased from Alden's a pair of trousers for her then four-year-old son; that the trousers were defective and dangerous in that they were highly flammable; and that the sale of said trousers by Alden's was a breach of the implied warranty of fitness of purpose; that on or about May 23, 1954 the trousers, while being worn by Philip, ignited and burst into violent flames while Philip was standing near a fire, and that Philip suffered severe burns which resulted in a permanent physical injury to his leg.

373

■■■■■■■■■■■

On May 10, 1962 Alden's filed its amended answer and an amended third-party complaint against Herman and Daniel Goldberg, d/b/a Collins Mfg. Company, hereafter referred to as "Collins," the manufacturer and supplier of the trousers, and Brookhaven Textiles, Inc., hereafter referred to as "Brookhaven," the supplier of the cloth to Collins.

On motion of Alden's, its action against Brookhaven was dismissed, and at the close of all the evidence the court directed a verdict in favor of Collins on Alden's third-party complaint. Collins had also filed a "counterclaim" against Brookhaven, based upon an implied warranty. At the close of all the evidence the court directed a verdict in this action in favor of Brookhaven. In addition to Philip's appeal against Alden's, Alden's has appealed against Collins, and Collins has appealed against Brookhaven.

From the record, it appears that on May 23, 1954, Philip, then four years old, lived with his parents at 741 West Kenilworth in Palatine, Illinois. The Knab home, which was new, was on a lot 70 feet wide by 220 feet deep. A driveway extended to the rear of the house on the west side, and the rear lawn opposite the driveway had been seeded. A flagstone patio approximately 15 feet by 15 feet adjoined the back door of the house. May 23, was a Sunday, and about 10:00 or 11:00 o'clock on that morning Philip's father, Richard, mowed grass and raked it up. He then set fire to the pile of debris. The fire was straight down the driveway on the west side of the lawn and from 50 to 55 feet from the back door of the house. A log 6 inches in diameter and 24 inches long had been placed on the fire. When Richard Knab went into the house at noon for lunch he thought the fire was out. During the morning Philip was in the house with his mother. After lunch the mother dressed Philip in underpants, undershirt and a new suit which she had purchased from Alden's on May 12, 1954. Philip

had never worn the suit before. The suit consisted of a T-shirt and long pants with elastic around the waist, called "boxer-type." The pants and shirt appeared to be of cotton. The shirt bore a label "Size 5, #6000, Collie Togs, by Collins Mfg. Co., Philadelphia."

Between 2:00 and 3:00 o'clock that afternoon Mr. and Mrs. James Cunningham, with their two children, and Mr. and Mrs. Edward Markowitz, with their two children, came to visit the Knabs. Philip was outside with Craig Cunningham, who was the same age as Philip. The others were visiting inside the home. Mrs. Markowitz heard a whimpering cry and went outside. Mrs. Cunningham followed her outside, and they saw Philip standing on the flagstone patio 6 to 7 feet, or 12 to 15 feet from the back door.

Mrs. Cunningham testified that when she went into the yard she saw Philip with his pants on fire. She stated, "The flames stood out from his pants four to six inches and reached above his knees to approximately the top of his legs. . . . It seemed to be a very rapidly burning fire."

Mrs. Markowitz testified that when she went out she saw Philip "and he was being burned alive. His pants were all on fire from the waist down. I began screaming. I ran to Philip. The only way I could describe it in my estimation was like a burning torch. To me it seemed that the flames were shooting out six or seven inches away from his pants."

Mr. Markowitz testified that when he went out he saw Philip on fire. He stated, "The lower part of his body was burning. The flame extended up above his waist. It was a big flame. I grabbed his pants at the waist and pulled them down. I burned my hands in doing so."

Richard Knab, father of Philip, testified that when he went out he saw Philip lying on the ground. His pants were ablaze, and Mr. Markowitz tore the pants off.

Mrs. Cunningham then picked Philip up and took him into the house. Mrs. Knab called the family doctor, and Mr. Knab took Philip to the doctor, then to the hospital. None of the witnesses testified that they observed any fires around the house at the time of the occurrence. Only the trousers worn by Philip were burned; his undershirt, shirt or undershorts were not burned. Alden's stipulated that Philip's jockey shorts were not burned, and that Philip's burns extended up to the line of the shorts.

Dr. Justin Fleischmann, the Knabs' family doctor, testified that he had known Philip prior to the occurrence; that Philip had been in excellent health and had no marks or scars on his body; that when Philip was brought to him on the afternoon in question Philip was screaming with pain. He was wearing cotton short underpants which were not burned. Dr. Fleischmann testified that Philip had suffered severe burns which required extensive skin grafting operations resulting in the formation of permanent scars. Dr. Fleischmann also testified that in his opinion, the burns were caused by a flash-type burn, a sudden explosive type flash-up of fire that disappears just as quickly as it appears.

Dr. Donald S. Miller, an orthopedic surgeon, testified that he had examined Philip, and had found the scars; that the injuries had resulted in some sensory loss, and that Philip had a permanent injury to his legs.

Mrs. Knab identified the remnants of the material of the trousers and the shirt which Philip was wearing at the time of the occurrence. The shirt and trouser remnants were admitted in evidence. The remnants of the trousers and the shirt were analyzed by Leon Kirschner, an industrial hygienist, with B.S. and M.S. degrees from the University of Pennsylvania. He testified that he had submitted the material to a number

376

of chemical and burning tests, and that he had determined that the material contained an oxidizing agent which is a substance capable of supporting or increasing the combustibility of materials. He also determined the presence of chromates and peroxides which indicated a material that burns or ignites easily and burns quickly and intensely. He also performed an ignition pattern test on strips of the trouser material and he testified that these tests indicated that the material contained in its substances oxidizing agents capable of supporting combustion in an unfavorable position. He also examined the shirt and found that the material did not contain oxidizing agents, nor did it support combustion as the trousers did.

■ The suit by Philip against Alden's, the third-party action, and the counterclaim were all tried together before a jury. We will discuss the latter two actions later in this opinion. The major issues of fact under the basic complaint are:

(1) Were the trousers Philip allegedly wore at the time of the occurrence purchased from Alden's?
(2) Were the trousers so flammable as to be unfit for the purpose for which they were sold?
(3) Under the evidence, could it be held that there was an implied warranty of fitness by Alden's?

From a careful examination of the evidence it appears that the jury could have properly found that the clothes involved in the accident was purchased from Alden's. A contra-finding on that issue would be against the manifest weight of the evidence.

The next question to be considered is: Were the trousers made of such flammable material that they were not fit for the purpose for which they were sold; to wit, to be used as clothing for a very young child.

Since the testimony of the child plaintiff was excluded by the court there is no testimony in the record to indicate how the trousers were set on fire. The evidence, however, is such that the jury could have properly inferred that the fire which had previously been set in the yard by the father had not been entirely extinguished and that the trousers were ignited therefrom. There is evidence in the record that the trousers burned violently; the flames stood out from them at least 4 to 6 inches, reaching from above his knees to the top of his legs; that the fire was a rapidly burning fire, and that it was a big flame.

The attending physician stated in his testimony that the child's burns which he treated were caused by a flash-type burn. The one expert called as a witness testified during the trial that his tests of the trouser material showed that it contained an oxidizing agent, a substance capable of supporting or increasing the combustibility of materials, together with chromates and peroxides indicative of a material which burns or ignites easily and then burns quickly and intensely.

The discrepancies in the testimony of the witnesses which were stressed by Alden's in this court are not of such a character as would go to the essence of their evidence.

■ The plaintiff relies upon an implied warranty of fitness. The trousers were sold by Alden's to Philip's mother. There is no question that they were intended to be used as wearing apparel for a young child. Subsection 1 of section 15 of the Uniform Sales Act (Ill Rev Stats 1961, c 121½, § 15) provides:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer

> or not), there is as [an] implied warranty that the goods shall be reasonably fit for such purpose."

The factual requirements of an implied warranty of fitness for a particular purpose are that the buyer make known to the seller the purpose for which an article is purchased, and that it appears he relied on the seller's skill and judgment. Kirk v. Stineway Drug Store Co., 38 Ill App2d 415, 187 NE2d 307.

In the instant case, the trousers were purchased to be worn by a small boy. The purchaser relied upon the seller's skill and judgment that the trousers were not flammable and inherently dangerous, and were reasonably fit for such use.

In Haut v. Kleene, 320 Ill App 273, 50 NE2d 855, the court held that an implied warranty that foodstuffs sold are wholesome extends to one who was not the actual purchaser. In Lindroth v. Walgreen Co., 329 Ill App 105, 67 NE2d 595, affd 407 Ill 121, 94 NE2d 847, the mother of an infant purchased a vaporizer which was defective and caused injury to the infant. It was argued that the warranty could not be extended to the infant. In that case, in 329 Ill App 118, 119, the court said: "This contention does not appeal to our sense of justice. The suit was brought for the benefit of an infant fourteen months old, who, of course, was unable to enter into any contract. . . . It would be a reflection upon the administration of justice if the instant contention were sustained . . . ."

In Welter v. Bowman Dairy Co., 318 Ill App 305, 47 NE2d 739, it was held that an implied warranty of fitness of milk for human consumption extended to infant child of buyer. Also see Blarjeske v. Thompson's Restaurant Co., 325 Ill App 189, 59 NE2d 320.

In the Uniform Commercial Code, effective July 1, 1962 (Ill Rev Stats c 26, § 2–318), which is not applicable to this case, it is specifically provided that an

implied warranty extends to any person in the family or household of the buyer, if it is reasonable to expect that such person may use, consume, or be affected by the goods and who sustains personal injuries by the breach of warranty. In the comment on the Code in SHA ch 26, § 2–318, it is stated: "The first sentence codifies prior Illinois decisions: . . ." *

■ We hold that there was an implied warranty of fitness in this case and that it extended to Philip Knab. We will now consider whether there was a breach of the implied warranty on the part of Alden's.

The evidence in the record is sufficient to show that the trousers were inherently dangerous for use by a boy of Philip's age.

In Martin v. J. C. Penney Co., 50 Wash2d 560, 313 P2d 689, a shirt purchased by the plaintiff's mother from the defendant burst into flames when the boy passed by or came in contact with an electric stove. The jury returned a verdict for the plaintiff based on the breach of an implied warranty. The defendant put in expert testimony to show that the shirt made from cotton gingham was not inherently dangerous for reasonable use as wearing apparel. There was evidence in the record that the shirt burst into flames and was almost entirely consumed within five seconds. In that case the attending physician testified that the plaintiff's burn was caused by an explosive flash-type burn. The court affirmed the judgment of the trial court.

In Ringstad v. I. Magnin & Co., 39 Wash2d 923, 239 P2d 848, where the plaintiff, while wearing a cocktail robe, went near a stove and the robe caught fire, caus-

---

* "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. . ."

ing a severe burn, the court affirmed a judgment for the plaintiff in the trial court, based on a breach of implied warranty of fitness for a purpose. In that case the court said:

> "Since outer garments intended for domestic wear are not unlikely to come into momentary contact with lighted matches, tobacco, or stoves, it seems to us clear that a robe which, when this contact occurs, instantly bursts into flames and inflicts severe injury is unreasonably dangerous and unfit for use."

With that statement of law we are in accord. Also see Deffebach v. Lansburgh & Bros., 150 F2d 591 (DC Cir 1945), and Frank R. Jelleff, Inc. v. Braden, 233 F2d 671 (DC Cir 1956).

The defendant argues that the question of Alden's breach of its implied warranty was a jury question, and that the jury's verdict in favor of Alden's is not against the manifest weight of the evidence. Its theory is that it was necessary for the plaintiff to prove that the trousers burned with such rapidity as to amount to instantaneous combustion. We cannot agree with the extreme theory advanced by the defendant, and the cases cited in support of that theory tend rather to support the view which we have expressed.

The defendant cites Dempsey v. Virginia Dare Stores, 239 Mo App 355, 186 SW2d 217 (1945). In that case the plaintiff was wearing a "Fuzzy-Wuzzy" lounging robe in bed while smoking a cigarette. She put the cigarette in an ashtray and believed that it was extinguished. As she was moving the ashtray a flame shot up in her face from the side of the lounging robe. There was evidence that the garment was highly inflammable. The court sustained an involuntary nonsuit entered in the trial court on the ground that the robe did not burn rapidly inasmuch as the plaintiff had

time to arise from her bed, go into the bathroom and try to smother the flames with a bath mat. She then took the robe off, and an elevator boy knocked and entered the room before the robe was entirely consumed.

The defendant also cites Noone v. Perlberg, Inc., 268 NY App Div 149, 49 NYS2d 460, where the plaintiff was wearing an evening gown made of flammable material. Plaintiff and her witnesses testified that the flame flashed upon in one place and almost instantaneously enveloped the plaintiff.

In Deffebach v. Lansburgh Bros., 150 F2d 591 (DC Cir 1945), a robe which the plaintiff was wearing caught fire from a match which she was attempting to extinguish. She stated that the flames spread with great rapidity, "quicker than you snap your fingers."

The other cases are generally of the same tenor. Applying the rule which they set out to the evidence in the instant case, we must reach the conclusion that a finding that the trousers were unreasonably dangerous and unfit for use would be in accord with the evidence.

Alden's also criticizes the testimony of the expert because of his failure to follow the tests prescribed by the federal government in its laws relating to the testing of flammable material. However, in this case the expert testified that he was unable to follow said rules because he lacked the necessary quantity of unconsumed material to test. His testimony is clear that the trousers, portions of which he tested, were highly flammable, and that material containing the chemicals which he testified the material in question did contain, burns and ignites easily and burns quickly and intensely.

In considering the case as a whole, we agree with the statement in Lindroth v. Walgreen Co., 329 Ill App 105, 67 NE2d 595 at 107:

"Plaintiff had the right to prove his case by direct or circumstantial evidence. In criminal as well as in civil cases a verdict may be founded on circumstances alone. See Norkevich v. Atchison, T. & S. F. Ry. Co., 263 Ill App 1, 5, 6 (appeal denied by Supreme Court, id. xiv), and cases cited therein. See, also, Gardner v. Railway Express Agency, 274 Ill App 626, 631. Other cases to the same effect might be cited if it were necessary."

From the evidence in the record, it is apparent that the trousers were sold by Alden's and that there was an implied warranty of fitness, which warranty extended to Philip Knab, and even without the testimony of Philip, the evidence in the case is sufficient to show a breach of that warranty. The jury's verdict finding Alden's not guilty on Philip's complaint is, in our opinion, against the manifest weight of the evidence and therefore should be reversed.

■ At the time of the trial the plaintiff, Philip Knab, was twelve years old. He was offered as a witness in his own behalf. In a hearing outside the presence of the jury he testified as to his address; that he is in the sixth grade at Maple Wood School; that he attends Holy Cross Lutheran Church; and that children who do not tell the truth in the courtroom get punished and it is a sin. He further testified that on the day of the occurrence, May 23, 1954, he took a croquet mallet and struck a log; that a spark flew up and fell on his pants and his pants went up in flames. At the close of that hearing the court stated: "There is no question about his qualifications today at the age of approximately twelve years old to be a qualified witness. . . ."

There was then some further discussion with reference to an interrogation deposition taken of the mother on September 14, 1957, at which time the child was seven years old. Alden's was then the only de-

383

fendant in the case. At the time of the taking of the deposition Mr. Grant appeared on behalf of the plaintiff and Mr. Bailey on behalf of the defendant. These are the same attorneys who were engaged in the trial of the case. The court stated:

". . . While the deposition of the mother was being taken the question was asked of her: 'Does Philip know anything about this?' Her answer was, 'Vague recollections.' The question was finished, then with the word 'presently,' to make a complete question. Mr. Grant then interposed and said, 'I spoke to him, Joe,'—referring to Mr. Bailey—Joseph A. Bailey—'and he doesn't remember a thing.' "

The court then stated that in a previous discussion he had indicated that he might let the youngster testify, but that if he did testify to a clear remembrance of the occurrence he would be subject to impeachment by his own lawyer.

Philip was permitted to take the witness stand and state that he was going to be twelve Tuesday; his body and leg were exhibited to the jury. Further testimony on his part was not permitted. In this ruling the trial court was in error.

In all cases the trial court must determine finally, upon all circumstances, whether the child is competent to testify. 2 Wigmore, Evidence § 507 (3d ed). The trial court must also determine what degree of necessity exists as to whether or not the child's testimony should be placed before the jury. In McCormick, Evidence § 62, pp 140, 141 (1954 ed), it is stated:

". . . Disqualification for mental incapacity or immaturity seems to have more reason behind it, than any of the other rules of incompetency. Nevertheless, even this rule would doubtless have long

384

since been abandoned, except for the presence of the jury as the trier of facts. The judges distrust a jury's ability to assay the words of a small child or of a deranged person. *Conceding the jury's deficiencies, the remedy of excluding such a witness, who may be the only person available who knows the facts, seems inept and primitive. Though the tribunal is unskilled, and the testimony difficult to weigh, still it would be better to let the evidence come in for what it is worth, with cautionary instructions to the jury."* (Emphasis added.)

In an article entitled The Problem of the Child Witness, 10 Wyo L Rev 214, 221, 222 (1956), it is stated:

"The trend toward relaxation of the rules governing the competency of child witnesses demonstrates a growing appreciation by the courts of the fact that in many instances the testimony of a child is practically indispensable. . . ."

█ The date of competency or incompetency of a witness as a witness is fixed as of the time the witness is offered and not the time when the facts testified to occurred. This is the majority view of the courts. 58 Am Jur Witnesses, § 129 (1948 Ed). See also Litzkuhn v. Clark, 85 Ariz 355, 339 P2d 389, 392 (1959); Cross v. Commonwealth, 195 Va 62, 77 SE2d 447, 448 (1953). There are no Illinois cases which squarely pass upon this question. In determining the competency of a child witness the court should inquire into whether the child was able to receive accurate impressions of the facts to which its testimony related and to tell truly the impressions which had been received.

In Ehrenheim v. Yellow Cab Co., 239 Ill App 403, plaintiff's sister was with him at the time he was

injured, and was permitted to testify. The court said, at page 413:

"Nor do we think that the trial court erred in permitting plaintiff's sister (about 8 years old at the time of the accident and 12 years old at the time of the trial) to testify. She apparently had the necessary intelligence and the court did not abuse its discretion in ruling that she was competent as a witness but that the credibility and weight of her testimony was for the jury to determine. (Shannon v. Swanson, 208 Ill 52, 55.)"

In Hollaris v. Jankowski, 315 Ill App 154, 42 NE2d 859, a child was not permitted to testify. At the time of the trial the child was 8 years old; at the time of the accident he was 4. The trial court held a long preliminary examination of the child outside the presence of the jury. The child stated that his memory was not good about what happened, and furthermore, many people had talked to him on many occasions concerning the accident. The court refused to permit him to testify and the ruling of the trial court was approved. In that case it must be noted that the child was not the only eyewitness to the accident.

Hare v. Pennell, 37 NJ Super 558, 117 A2d 637, was a personal injury action against a Board of Education and one of its teachers who was in charge of a class at the time a 6-year-old child was struck in the eye with a pair of scissors by a classmate. The trial court had disqualified five infant witnesses on the sole ground that they were too young to testify. On appeal the judgment was reversed on the basis that the court's inquiry on voir dire into the qualifications of the children to testify was "extremely limited." The reviewing court held that the action of the trial court in disqualifying the witnesses was arbitrary and prejudi-

386

cial, for the children were the only persons in a position to tell the jury about the accident itself.

In Maynard v. Keough, 145 Minn 26, 175 NW 891 (1920), the court admitted testimony of an 8-year-old child concerning a dog bite inflicted on her when she was five. The court said:

"When the case came to trial, three years had elapsed, and plaintiff was eight years old. The court received her testimony. The record indicates she was a bright child, had finished the second grade in school and had a due appreciation of the significance of an oath. No serious question could arise as to the competency of a child of her age and intelligence to testify, were it not for the lapse of time from the occurrence of the events as to which she testified, and the fact that at the time those events happened she was probably too immature to testify as a witness. We do not think her testimony should be rejected on this ground. *Her memory as to what occurred appeared to be quite distinct. A person may remember well events that happened during immature childhood. Competency to testify must be determined by capacity at the time the testimony is offered. The distinctness of the witness' memory goes only to the weight or effect of the testimony given.*" (Emphasis added.)

In the examination held by the court outside of the presence of the jury, Philip did state the facts of the occurrence. There was no examination by the court or by opposing counsel as to the degree or credibility of his recollections. The court apparently refused to permit the child to testify solely on the earlier statements made by his mother and his attorney. Having found that Philip was competent to testify at the time of the trial, the court could not disqualify the sole eyewitness of the occurrence on the ground of his

mother's statement as to "vague recollections" * and his attorney's statement, "He doesn't remember a thing." If at the time of taking the deposition, counsel for defendant was willing to forego discovery because of the representations of the mother and the attorney for the plaintiff, that was his choice. He could at that time have proceeded to ascertain the testimonial competency of the child. The reliance of defendant on the mother's and attorney's statements and his failure to take a discovery deposition should not preclude the calling of Philip as a witness.

Therefore, we find that Philip should have been permitted to testify. The fact that the mother's and the lawyer's statements could be used, if admissible, to counteract the weight and credibility of Philip's testimony is not sufficient ground for refusing to allow him to testify.

■ Alden's urges that the trial court erred in directing a verdict on Alden's third-party action against Collins, and argues that if Alden's was liable to Philip, then Collins would be liable to Alden's both on the theory of implied warranty and because Collins, at the time of the sale of the clothes to Alden's, included in the sales agreement a clause by which it agreed to indemnify and save the buyer harmless from any loss or damages arising out of litigation relating to the manufacture, sale and use or consumption of the merchandise. We condsider this position to be sound.

Brookhaven here argues that no relief should be granted to Collins since they filed their post-trial motion late; that they failed to prove any case against Brookhaven; and that consequently, the court properly directed a verdict in favor of Brookhaven.

---

* Afterwards, an offer of proof was made by the plaintiff. It was to the effect that Mrs. Knab would testify as follows: "About a week after my son was hospitalized, he told me that he and Craig had been playing with the croquet mallets and that he struck a log and sparks flew up and his pants caught on fire."

388

■ Collins argues that no question could be raised as to the time when their post-trial motion was filed s'nce there was no necessity for the filing of a post-trial motion where a verdict was directed. In spite of the holding in Mann v. Sanders, 29 Ill App2d 291, 173 NE2d 12 (3d Dist 1961) (Abst), we hold that such is not the law. Under the provision in sec 68.1(2) of the Civil Practice Act, ". . . A party may not urge as error on review of the ruling of his post-trial motion *any point, ground, or relief* not particularly specified in the motion." Sec 68.1(5) provides that "Any party who fails to seek a new trial in his post-trial motion, either conditionally or unconditionally, as herein provided, waives the right to apply for a new trial, except in cases in which the jury has failed to reach a verdict."

■ Collins also urges here that the ruling on the post-trial motion was not barred by a time limitation because of the provision of sec 50(2) of the Civil Practice Act which provides that a judgment order involving multiple claims and multiple parties may be revised at any time before all matters in the case have been terminated, and the fact that at the time Collins' post-trial motion was filed the entire matter was open to consideration by the court. With this contention we agree. We do not agree with Brookhaven's contention that Collins failed to prove any case against it.

■ In a discussion with the court out of the presence of the jury, after all the evidence had been heard, strenuous objection was made by counsel for Alden's because of a demand made on Alden's by Collins in the presence of the jury to produce certain tests on the fabrics alleged to have been made. At that time Alden's asked to withdraw a juror on the ground that irreparable prejudice had been created against it. That motion was overruled and the court then stated that the case could not possibly be tried with the other two third-party defendants in it, and thereupon, the

■■■■■■■■■■■■■■■■

court entered the order directing verdicts heretofore referred to.

In the recent case of Harvan v. Trask, 47 Ill App2d 403, 198 NE2d 183 (No. 49,227), a case in which we recently handed down an opinion, we reversed an order of the trial court dismissing a third-party complaint, and pointed out that section 51 of the Practice Act provides that an action may be severed as an aid to convenience whenever it can be done without prejudice to a substantial right; and section 44 of the Practice Act, paragraph 2, provides that the court may, in its discretion, order separate trials of any causes of action, counterclaim or third-party claim if it cannot be conveniently disposed of with the other issues in the case. In that case we say: ". . . It would seem in cases of this type where third-party complaints are filed that the trial court should, after issue has been properly joined thereon, hold the trial of the issue raised in the third-party complaint in abeyance until the issues in the original suit are determined." In case no motion to sever the cases is made by the parties, we think a duty devolves upon the trial court to order a severance, and that the third-party complaints, after a judgment is entered against the third-party plaintiff, should be submitted to trial either before the same jury or another jury in the discretion of the trial court.

From the record in this case, it appears that the jury had before it the evidence introduced on behalf of the counterclaimants. A jury under the circumstances brought out in this record would have to have an exceptional sense of discrimination to separate the ancillary claims of the various parties and still properly determine the issues in the main action between Philip and Alden's.

The judgment of the Superior Court of Cook County against Philip Knab, a minor, by Dolores Knab, his

mother and next friend, and in favor of Alden's Irving Park, Inc., a corporation, is reversed. The judgment entered in favor of Herman and Daniel Goldberg, d/b/a Collins Mfg. Company, third-party defendant, and against Alden's Irving Park, Inc., third-party plaintiff, is reversed. The judgment entered in favor of Brookhaven Textiles, Inc., a corporation, counterdefendant, and against Herman and Daniel Goldberg, d/b/a Collins Mfg. Company, counterplaintiff, is reversed. The case is remanded for a new trial, or trials as to all parties, and for such other proceedings as are not inconsistent with this opinion.

Reversed and remanded.

ENGLISH, P. J. and DRUCKER, J., concur.