JOSEPH N. CARRAO, Plaintiff-Appellant, *v.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 63013

Opinion filed February 10, 1977.

34

Rosenthal & Carnow, of Chicago (Donald S. Carnow and Ben J. Rosenthal, of counsel), for appellant.

Michael J. Murray, of Chicago (Leo F. Alt, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal pursuant to the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*) to review the decision of the circuit court affirming the action of the Board of Education of the City of Chicago (Board) dismissing plaintiff from the teaching service for conduct unbecoming a teacher.

Plaintiff presents the following issues for review: (1) whether he was denied due process of law because of various procedural deficiencies in the hearing process; (2) whether the superintendent's attorney (prosecutor) also assisted and advised the trial committee and, hence, functioned unlawfully in multiple capacities; (3) whether a member of the trial committee was biased and prejudged the facts; (4) whether specific findings of facts were submitted and filed by the trial committee; and (5) whether the Board's decision was against the manifest weight of the evidence.

The complaint charging conduct unbecoming a teacher in the Chicago public schools filed against plaintiff by the acting general superintendent of schools specified that "on or about June 30, 1974, Joseph N. Carrao, a teacher at the McCutcheon Elementary School, took indecent liberties with a minor, a student at the McCutcheon School, while on a trip to Minnesota." The complaint also charged that such conduct was not remediable.

A hearing was conducted before a trial committee of three Board members appointed to hear the charges. The first witness called on behalf of the general superintendent was eight-year-old Susan VanderVieren. She testified that when she went on vacation to Minnesota with her family, plaintiff drove them in a van, pulling a camp trailer. Upon arrival at the vacation site, he parked his trailer near their cabin and, although she stayed in the family cabin most of the time, on two occasions she slept in

the trailer. One night, while she was sleeping in the trailer, she awakened and found that her sleeping bag had been partially unzipped, her pants were down, and plaintiff was touching her "front and back" with his hands. (The record reflects that Susan, for purposes of explanation, pointed to her private parts.) She also stated that she was afraid to tell him to stop, but eventually she left the trailer and went to the cabin.

Mrs. Lois VanderVieren, Susan's mother, testified that she had known plaintiff for some time, as he had been a teacher of four of her five children. He drove them to their cabin in Minnesota and was permitted to set up his camp trailer near the cabin and stay for a few weeks. On occasion, the children would sleep in his trailer. On the night in question, Susan returned from the trailer and, after a short period of time, she began crying. When Susan told her what happened, she dressed and went to the trailer with her oldest son to get Melinda, another daughter who was also sleeping there. When she asked, "How could you?" plaintiff answered, "I must have been dreaming." He then left the premises at her request. The next day, she reported the incident to the local sheriff and to the principal of the McCutcheon School. The following week, she received a letter from plaintiff, mailed from Chicago, stating he was sorry and that he hoped for the children's sake the whole thing was "not a permanent scar." Several days after receipt of the letter, she received another note from plaintiff—this time pinned to the cabin door—accompanied by bags of groceries and a carpet sweeper, stating that plaintiff was at a nearby motel and wanted to talk with her. She notified the local sheriff that plaintiff was back.

Sheriff John Lyght, of Cook County, Minnesota, testified that after Mrs. VanderVieren notified him of plaintiff's presence in a nearby motel, he proceeded there and confronted him with her complaint of child molesting. According to the sheriff, plaintiff responded by saying, "I don't know what got into me. I know I shouldn't have did [sic] it."

Ten-year-old Melinda VanderVieren, called as a witness by plaintiff, testified she was Susan's sister and that, on the night in question, she was also sleeping in the trailer but did not see the incident. She also stated that on occasions Susan had lied to her.

Several witnesses were then called who testified that plaintiff was a conscientious teacher and of good character. Plaintiff then testified on his own behalf and denied taking any indecent liberties with Susan or any other child. He said that on two occasions he found Susan out of her sleeping bag in the trailer and, because it was cold, he helped her back into her bag. He also said that Susan attempted to get into his sleeping bag with him on the night in question, and he scolded her for doing so. Later, she left the trailer and went to the cabin. Shortly thereafter, Mrs. VanderVieren appeared with one of her sons and requested that he leave

the property. Although plaintiff first stated at the hearing that he was not sure what he had done to upset Mrs. VanderVieren, he later acknowledged that she said something about bothering the children. The week after he left, he sent a note expressing his sorrow and, later, a note asking to see her at a nearby motel. The sheriff then came to the motel, accused him of child molesting and asked him to leave the county.

Following the hearing and upon recommendation of the trial committee, the Board dismissed plaintiff from the teaching service. The decision was affirmed in the trial court, and this appeal was taken from its judgment.

OPINION

The points raised by plaintiff on appeal appear in his brief as Arguments I to V and to assist in an understanding of their content, we will refer to pertinent portions of each.

In Argument I, plaintiff contends he "was denied substantive and procedural due process of law" because of various procedural deficiencies in the hearing process. He argues that the complaint was insufficient because it did not state all essential elements of a cause of action, and that he did not receive an answer to his motions for a bill of particulars, a list of witnesses, or copies of their statements. We find no merit to these contentions.

■■■ The charges in administrative proceedings need not be drawn with the same precision required of pleadings in judicial actions but need only be sufficiently clear and specific to allow the preparation of a defense. (*Kelly v. Police Board* (1975), 25 Ill. App. 3d 559, 323 N.E.2d 624.) In the instant case, we believe the charge was sufficiently specific. The record reflects that not only was plaintiff provided with a bill of particulars, but he was also given additional information—which included copies of plaintiff's written notes, a written summary of plaintiff's oral statements, an extensive typewritten narrative account of the incident by Sheriff Lyght, a letter written by Mrs. VanderVieren to a school official complaining of plaintiff's conduct, and a letter naming the minor referred to in the charge.

■■ We see no prejudice to plaintiff because he did not receive in advance of the hearing the handwritten notes of an employee of the Board concerning an interview with Melinda VanderVieren. In his brief, plaintiff admits they were tendered to him during the hearing and before he called Melinda as his own witness. We note also that Melinda was not impeached or otherwise discredited by anything she may have said in the interview, and it appears also that plaintiff was allowed to conduct a voir dire examination of the interviewing employee to determine whether other written statements existed.

■■ Further, although plaintiff states in his brief that he was also prejudiced because he received no list of witnesses, the record discloses an admission by his attorney at the trial court hearing that, "We did get a list of witnesses." In any event, we see no prejudice as plaintiff apparently was provided with all available documents concerning the knowledge of those who testified.

Plaintiff's Argument II is entitled, "The Board Assumed an Unlawful Combination of Functions" which, he asserts, was in violation of his due process rights. Two references are made in support thereof. First, he argues that the Chairman stated on one occasion, "We have a very bona fide good attorney over there, who knows all the procedures"; and second, he states that "[o]rchestrated by the objections of the superintendent's attorney, the Chairman refused to permit the Appellant to cross-examine Susan VanderVieren on her competency to know the difference between a white lie and a lie * * *." He asserted that by such questioning, "[a]ppellant attempted to ascertain whether the testimony of the young child was implanted in her mind by an interested party and whether she knew the difference between a falsehood that would hurt and one that would not." He concludes that on the basis of these two references, "that the combination of functions assumed by the Chairman using Mr. Alt [prosecuting attorney] as her attorney was violative of Appellant's right to procedural due process of law."

■■ While it is true that reversible error could occur if the prosecuting attorney also acted as advisor to the trial committee (*Miller v. Board of Education* (1964), 51 Ill. App. 2d 20, 200 N.E.2d 838), such is not the case here. Concerning his first supporting reference, the record reflects that the Chairman made the following statement:

> "I'd like the record to show that I think I might have confused things. I have never spoken to Mr. Alt, Mr. Alt doesn't help us, or advise us in any way. He is the Superintendent's attorney."

Further, Mr. Sbarboro, a member of the trial committee who is also an attorney, specifically stated: "* * * I understand Mr. Alt's duty is to be trial counsel for the General Superintendent in the prosecution of this matter, not to be counsel to the Board itself * * *." Concerning reference (2), we note that plaintiff does not point out the specific objections which he contends "orchestrated" the Chairman's refusal to permit him to cross-examine Susan as to whether she knew the difference between a white lie and a lie. We have examined the record, however, and it appears to us that the objections made to those questions were not improper—particularly when they are considered in the light of Susan's answer that she didn't know what plaintiff's attorney meant by the term "white lie." It is our opinion the two references cited by plaintiff clearly fail to establish

his contention that, through its trial committee, "The Board assumed an unlawful combination of functions" in violation of his due process rights.

Plaintiff entitles his Argument III as follows: "The Board Permitted Itself to become Biased and thus became Disqualified as an Unbiased Arbitrator of Facts." In support thereof, he contends that Mr. McGee, a member of the trial committee "openly stated he had seen and reviewed certain documents and letters prior to trial" and, from this statement, he concludes that the member prejudged plaintiff's guilt.

It is an established principal that the decision of an administrative agency will be set aside if the prejudice or bias of a hearing officer results in an unfair hearing (*Gigger v. Board of Fire & Police Commissioners* (1959), 23 Ill. App. 2d 433, 163 N.E.2d 541), but mere familiarity with the facts of a case does not disqualify a decisionmaker (*Hortonville Joint School District No. 1 v. Hortonville Education Association* (1976), ___ U.S. ___, 49 L. Ed. 2d 1, 96 S. Ct. 2308. Plaintiff must show that a decisionmaker is not " 'capable of judging a particular controversy fairly on the basis of its own circumstances.' " ___ U.S. ___, ___, 49 L. Ed. 2d 1, 9, 96 S. Ct. 2308, 2314.

■■ Here, plaintiff's counsel inquired of the members of the trial committee whether they had seen any documentary evidence prior to the hearing, and Mr. McGee answered only that he had seen "a" statement. There is nothing in the record to indicate who gave the statement, to whom it was given, or whether Mr. McGee even read it. The fact that Mr. McGee had seen "a" statement, unsupported by anything else that we have found in the record or that plaintiff has pointed out to us, falls far short of establishing bias or impartiality.

Plaintiff's Argument IV asserts a denial of due process because the trial committee and the Board "failed to submit specific findings of facts and conclusions of law." We disagree.

■■ A decision by an administrative agency must contain findings to make possible judicial review of the agency's decision, and those findings are determinations from the evidence of a case concerning the facts averred by one party and denied by the other. (*Reinhardt v. Board of Education* (1974), 19 Ill. App. 3d 481, 311 N.E.2d 710; *Kozsdiy v. O'Fallon Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 173, 334 N.E.2d 325.) In the instant case, both the trial committee and the Board expressly found as follows:

"1. That the written charge and specification as set forth in Board Report 74-1190-4 were properly filed by the General Superintendent of Schools against Joseph N. Carrao, an elementary school teacher employed by the Board of Education of the City of Chicago;

2. That the said Joseph N. Carrao was properly suspended effective December 16, 1974 pending hearing on said charge and specification;

3. That pursuant to Sec. 34—85 of the School Code due notice of the hearing on said charge and specification, together with a copy thereof, was served upon the said Joseph N. Carrao not less than twenty (20) nor more than thirty (30) days prior to the hearing thereon;

4. That the charge against Joseph N. Carrao of conduct unbecoming a teacher in the Chicago Public Schools was proven in that on or about June 30, 1974, Joseph N. Carrao took indecent liberties with a minor while on a trip in Minnesota.

5. That the charge and specification is not remediable."

We believe these findings reasonably inform plaintiff of the grounds relied upon by the Board in reaching its decision, and they are sufficiently specific to provide a basis for our review.

■■ In his Argument V, plaintiff contends the decision of the Board was against the manifest weight of the evidence. The findings of an administrative agency are considered prima facie correct and will not be disturbed on review unless contrary to the manifest weight of the evidence. (*Marion Power Shovel Co. v. Department of Revenue* (1969), 42 Ill. 2d 13, 244 N.E.2d 598.) It is not our function to reweigh the evidence before an administrative body, and it is only when the body's order is clearly against the manifest weight of the evidence that it will be set aside. (*Quincy Trading Post, Inc. v. Department of Revenue* (1973), 12 Ill. App. 3d 725, 298 N.E.2d 789.) Or, as it was more succinctly stated, an agency decision will not be found to be against the manifest weight unless an opposite conclusion from the evidence is "clearly evident." (*Legones v. License Appeal Com.* (1968), 100 Ill. App. 2d 394, 403, 241 N.E.2d 499, 503.) Here, we do not believe that such an opposite conclusion may be drawn. Three witnesses testified for the Board, none of whom were impeached. The testimony of Susan, when considered with (1) the response plaintiff made to her mother, that "I must have been dreaming," when he was asked about the alleged incident with Susan; (2) his statement to the sheriff, when he was told of the child molesting complaint, that "I don't know why I did it"; (3) the letter written by plaintiff to Susan's mother after the incident, in which he expressed his sorrow with the hope that "* * * for the children's sake that the whole thing is not a permanent scar"; and (4) the fact that he returned to Minnesota afterwards and left bags of groceries and a carpet sweeper at the cabin, with a note to Susan's mother asking whether he could see her, amply supports the findings of the Board.

During oral argument, plaintiff suggested that the trial committee improperly refused to permit him to interrogate Susan as to her

competency as a witness before her substantive testimony was given. The question of the competency of a child must be raised at the time of trial (*People v. Mueller* (1954), 2 Ill. 2d 311, 118 N.E.2d 1), and a reviewing court should not consider the question of the competency where the record fails to reveal any motion to exclude the child's testimony during trial (*People v. Matthews* (1959), 17 Ill. 2d 502, 506, 162 N.E.2d 381, 384). No such motion was made in the instant case nor has plaintiff asserted, at any time, that the competency of Susan as a witness was not established.

■■■ Nevertheless, because Susan was a crucial witness, we have examined the record to determine whether plaintiff was in fact prejudiced. When a child under 14 is called to testify, the trial judge should ascertain in the first instance whether the child is competent as a witness (*People v. Tucker* (1971), 3 Ill. App. 3d 152, 278 N.E.2d 516), and a preliminary examination should be conducted to determine that fact (*People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451). This requirement for prior determination of competency has been applied not only to jury trials but also to bench trials and other hearings without a jury (*People v. Sims* (1969), 113 Ill. App. 2d 58, 61, 251 N.E.2d 795-97; *Knab v. Alden's Irving Park, Inc.* (1964), 49 Ill. App. 2d 371, 199 N.E.2d 815), and we believe it is equally applicable to an administrative hearing where, as here, it is adversary in nature (see *Gigger v. Board of Fire & Police Commissioners*).

■■ While it would have been the proper procedure here for the trial committee to have allowed plaintiff to examine Susan after the prosecutor had preliminarily questioned her as to competency, we note that plaintiff's attorney did in fact so question her in his cross-examination, and we believe that the totality of this interrogation meets the guidelines of *People v. Davis* (1957), 10 Ill. 2d 430, 436, 140 N.E.2d 675, 680, *cert. denied*, 355 U.S. 820, 2 L. Ed. 2d 35, 78 S. Ct. 25, where it was stated:

> "If the witness was sufficiently mature to receive correct impressions by her senses, to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth, she was competent. Not age, but the degree of intelligence of a child, determines the question of the child's competency."

Our belief is buttressed by the fact that plaintiff did not raise any question as to her competency before the trial committee, the trial court, or before this court. Under such circumstances, we see no prejudice to plaintiff by reason of the fact that he was not allowed to preliminarily cross-examine the child as to competency.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and DOWNING, JJ., concur.