JOHN V. KARAS, Plaintiff-Appellant, *v.* ALAN J. DIXON, Secretary of State, *et al.,* Defendants-Appellees.

First District (5th Division)    No. 78-308

Opinion filed December 29, 1978.

Benjamin DiGiacomo, of Chicago (Angelo D. Mistretta, Ltd., and Anthony Intini, III, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (George H. Klumpner, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

After a hearing, defendant,[1] Secretary of State, revoked the issuance of 1977 automobile registration number "KAK" to plaintiff and assigned that number to plaintiff's ex-wife. Pursuant to section 4 of the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*), plaintiff filed a complaint in the circuit court. The circuit court affirmed the order of the Secretary of State. Although plaintiff phrases the issues somewhat differently, his appeal raises basically these two points: (1) The circuit court erred in finding that the Secretary's order was not against the manifest weight of the evidence; and (2) the circuit court erred in refusing to find that the hearing officer's failure to grant plaintiff a continuance violated his due process rights. We disagree on both points and affirm the decision of the circuit court.

On May 14, 1976, a divorce judgment was entered between plaintiff and Sandra Karas. The judgment provided that as part of the property settlement plaintiff was to transfer title to a 1970 "Chevrolet Cougar" to Sandra. On May 21, title was transferred. At the time of transfer, 1976 license plates number KAK, which had been issued to plaintiff as owner of

---

[1] The other named defendants are employees of the Secretary of State's Office who participated in the decision to revoke the number.

the car, were attached to the vehicle. Plaintiff neither made an attempt to remove the plates nor did he discuss the removal of the plates with Sandra. On May 26, Sandra applied for and subsequently received title to the Cougar.

Sometime thereafter, defendant, Secretary of State, received an affidavit which stated that plaintiff no longer wished to retain an interest in license plate number KAK and requested that the number be transferred to Sandra. The affidavit was notarized on June 29, 1976, and purported to contain plaintiff's signature. The notary public later testified at the hearing that plaintiff's name was not signed in her presence.

Sometime late in June or early in July of 1976, Sandra traded in the Cougar and purchased a 1976 Oldsmobile Cutlass. On July 7, she applied for 1976 registration number KAK as registered owner of the Cougar. Later, at the hearing, she testified that she could not recall making this application, but when shown the application she stated that the signature was hers. On July 13, an application was made in plaintiff's name for 1976 registration number KAK license plate replacement based on the representation that the plates had been lost. Although plaintiff's signature appeared on the application, he denied having made the application and claimed that the signature was a forgery.

On or about August 24, plaintiff applied for 1977 registration number KAK as registered owner of the Cougar. On August 26, the number and plates were issued to plaintiff. Then, on August 30, 1976, registration number KAK was issued to Sandra.

On September 24, Sandra applied for title to a 1976 Oldsmobile Cutlass and for a transfer of 1976 registration number KAK from the Cougar to the Cutlass. Title was issued and the registration number was transferred. On or about September 30, Sandra applied for 1977 registration number KAK as registered owner of the Cutlass.

On February 15, 1977, plaintiff applied for title to a 1968 Pontiac Coupe and for a transfer of his 1977 registration number KAK from the Cougar to the Pontiac. Title was issued and the registration number was transferred. On April 5, plaintiff, who had become aware of the June 29, 1976, affidavit, notified the Secretary of State that the affidavit was forged.

A hearing was held based on these facts to determine who was entitled to 1977 registration number KAK. Upon conclusion of the hearing, the Secretary of State asserted that the 1977 registration number had been erroneously issued to plaintiff and ordered that the number be revoked and assigned to Sandra. His order was based upon findings that:

> "1) There could be no valid transfer of 1977 registration from the Mercury Cougar which Mr. Karas had no ownership interest in at the time of the attempted transfer and which was based on an

invalid application and issuance of 1977 Illinois registration to said Mercury Cougar in his name.

2) That prior to John V. Karas's application for 1977 registration KAK to the Mercury Cougar or transfer of 1977 registration to the 1968 Pontiac Coupe, Mrs. Karas had made valid application for both 1976 registration to the Mercury Cougar and valid application for transfer of the 1976 registration to the 1976 Oldsmobile Cutlass and subsequent application for 1977 registration to the 1976 Oldsmobile Cutlass."

OPINION

■■■ In reviewing the circuit court's decision in this case, we are limited to determining whether the Secretary of State's findings were contrary to the manifest weight of evidence. (*Wegmann v. Department of Registration & Education* (1978), 61 Ill. App. 3d 352, 377 N.E.2d 1297; *Landfield v. Howlett* (1974), 23 Ill. App. 3d 885, 320 N.E.2d 356 (abstract).) In order to determine that the Secretary's findings were against the manifest weight of the evidence, we must find that the opposite conclusion is clearly evident. (*Epstein v. Civil Service Com.* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782; *Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33, 360 N.E.2d 536.) If the findings were against the manifest weight of the evidence, then we must reverse the decision of the circuit court.

An "agency has only such authority as is conferred by express provision of law or is found, by fair implication and intendment, to be incident-to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the objectives for which the agency was created." (*Department of Public Aid v. Brazziel* (1978), 61 Ill. App. 3d 168, 172, 377 N.E.2d 1119, 1121-22.) The actions of the Secretary of State are bounded by the express and implied provisions of the Illinois Vehicle Code [Code]. Ill. Rev. Stat. 1975, ch. 95½, par. 2—101 *et seq.*

Section 3—501 of the Code provides in relevant part:

"Whenever the owner of a registered vehicle transfers or assigns his title, or interest thereto, the registration of such vehicle shall expire and the owner shall not be entitled to any refund of the registration fee. The owner shall remove the registration plates therefrom and forward the same to the Secretary of State or may have such plates and the registration number therein assigned to another vehicle upon payment of the fees required by law and subject to the rules and regulations of the Secretary of State." (Ill. Rev. Stat. 1975, ch. 95½, par. 3—501.)

According to this section, when plaintiff transferred title to the Cougar to Sandra on May 21, the registration for that vehicle expired, but he was

entitled to transfer the plates and the registration number from that vehicle to another vehicle upon payment of the proper fees. Although section 3—501 does not provide any time limit to such a transfer, another section of the Code does. Section 3—421(a) provides in relevant part:

> "Every natural person shall have the right of reassignment of the license number issued to him during the current year, for the ensuing year, provided his application for reassignment is received in the Office of the Secretary of State on or before September 30 of the current year as to a vehicle registered on a calendar year * * *." (Ill. Rev. Stat. 1975, ch. 95½, par. 3—421(a).)

This provision gives plaintiff an interest in the plates and registration number which remain his so long as he applies for renewal on or before September 30 of the current calendar year. Therefore, for the Secretary of State's decision to have been correct in this case, plaintiff must have failed to apply for renewal of his plates on or before September 30.

■■ The Secretary of State found that plaintiff's application on or about August 24 for 1977 registration number KAK was both untimely and invalid. He stated that it was untimely because Sandra had made a valid application for 1976 registration number KAK on July 7 and for transfer of the number to the Cutlass on September 24. This finding was wrong as a matter of law. Our reading of the appropriate statutory sections indicates that Sandra could not have made a valid application for the registration number until September 30. Prior to that time, plaintiff retained an interest in the plates and number and that interest was renewable provided that he complied with the requirements of section 3—421. Therefore, Sandra's applications were invalid and could not defeat plaintiff's interest in the plates and registration number.

■■ The Secretary of State also found that plaintiff's August 24 application was invalid because he applied for, and subsequently received, the 1977 registration number *as registered owner of the Cougar*, even though he had given up interest in the vehicle on May 21. Section 3—704 (Ill. Rev. Stat. 1975, ch. 95½, par. 3—704) authorizes the Secretary of State to revoke a registration number if it is found that it was erroneously issued. Although the Code does not expressly state what is meant by numbers which are "erroneously issued," we think that it can be fairly implied from a reading of the Code that the issuance of a registration number to an individual who either does not own the vehicle listed on the application or who does not own a vehicle to which the number may be transferred is erroneous. The registration requirements of the Code affect only *owners of vehicles*. (Ill. Rev. Stat. 1975, ch. 95½, par. 3—401.) Since plaintiff did not own the Cougar or some other vehicle to which he could have transferred the plates and registration number, the Secretary of State did not exceed his power in revoking plaintiff's registration.

Once the Secretary had found that plaintiff's August 24 application was invalid and that he had not made a proper application for renewal on or before September 30, he correctly ruled that plaintiff's interest in the number and plates had expired. With the expiration, the Secretary of State could issue the registration number to whoever properly requested the number. Since Sandra made a proper application for the number on or about September 30 as the registered owner of the Cutlass, and since this application preceded plaintiff's February 15 application, we cannot say that the Secretary's decision to issue the number to her was against the manifest weight of the evidence.

Plaintiff also argues that the circuit court erred in refusing to find that the hearing officer's failure to grant him a continuance in order to produce a handwriting expert violated his due process rights. He wished to produce a handwriting expert so that he could show that the June 29 affidavit was a forgery. However, assuming *arguendo* that the handwriting expert would have declared the June 29 affidavit a forgery, the result in this case could not have differed. Plaintiff never made a proper application for renewal of his registration on or before September 30. Therefore, on September 30, his interest expired and it was proper for the Secretary to issue the registration number to the first person to apply, in this case, Sandra.

For the foregoing reasons, we affirm the decision of the circuit court.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.

