JIM BAKER, Plaintiff-Appellee, *v.* ILLINOIS RACING BOARD, Defendant-Appellant.

Fifth District    No. 80-470

Opinion filed September 22, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellant.

Grey Chatham, of Hillebrand, Cook & Shevlin, of East St. Louis, for appellee.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Illinois Racing Board, appeals from an order of the circuit court of St. Clair County reversing the Illinois Racing Board's imposition of a suspension on plaintiff, Jim Baker.

The Illinois Racing Board and stewards are charged by law with regulating horse racing in Illinois pursuant to the Horse Racing Act of 1975 (Ill. Rev. Stat. 1979, ch. 8, par. 37—1 *et seq*.). The Illinois Racing Board is a department of the State, and its members are executive officers appointed by the Governor. (Ill. Rev. Stat. 1979, ch. 8, par. 37—4.) Racing stewards are representatives of the Board at race meets licensed by the Board, and they supervise horse racing meets as provided by the rules and regulations of the Board. (Ill. Rev. Stat. 1979, ch. 8, par. 37—3.19.) The stewards are empowered to investigate violations of Board rules and to revoke or suspend occupational licenses upon a finding that the rules have been violated. (Ill. Rev. Stat. 1979, ch. 8, par. 37—16.) The stewards' findings may be appealed to the Racing Board for a *de novo* hearing, and the Board's decision may be appealed to the circuit court for administrative review. Ill. Rev. Stat. 1979, ch. 8, pars. 37—16(c) and 37—46.

Plaintiff, Jim Baker, was licensed as a vendor by the Illinois Racing Board. He operated a tack shop, designated as Baker's Turf Supply, at the Cahokia Downs and Fairmont Park race tracks. On March 15, 1978, plaintiff received a notice from the State stewards that he was charged with violating Harness Rules 21.5(b) and 21.6. The notice of hearing stated:

"March 15, 1978

TO: Mr. Jim Baker

You are hereby advised of a scheduled Stewards' hearing regarding your alleged violation of Illinois Racing Board rules—

No. 21.5(a)

No person, except a veterinarian licensed by the Board, shall have in his possession within any race track enclosure any hypodermic syringe or needle or any other instrument capable of being used for the injection into a horse of any chemical substance.

No. 21.5(b)

No person, except a veterinarian licensed by the Board, shall have in his possession within any race track enclosure any substance

prepared for the purpose of being injected into a living being.
No. 21.6

No person, except a veterinarian licensed by the Board, shall have in his possession within a race track enclosure any chemical substance which is prohibited from being dispensed by any Federal or Illinois law without a prescription, unless he is in possession of documentary evidence that a valid prescription has been issued to him for such chemical substance. For purposes of this rule, a prescription shall not be valid unless it contains a specific dosage for the particular horse or horses to be treated by the chemical substance which is the subject of the prescription.
No. 2.07(g)

Reasons for Denial of License—

No license shall be issued by the board to any person—

G) Who is engaged in any activity or practices that are undesirable or detrimental to the best interest of the public and the sport or racing.

This hearing will be held at 10:00 A.M., March 23, 1978, at Cahokia Downs. Should you fail to appear, it may result in your immediate suspension. Also, be advised of your right to have legal counsel present during this hearing.

Richard E. Garrett

Richard E. Garrett
State Steward."

After the hearing on March 23, Baker was found guilty of violating Harness Rules 21.5(b) and 21.6 on the basis that he possessed and sold prescription drugs while on the grounds of Cahokia Downs and Fairmont Park. It was also stated that Baker was not a licensed pharmacist. The stewards suspended Baker's vendor's license for the remainder of 1978. Baker requested a *de novo* hearing before the Illinois Racing Board. The hearing before the Racing Board was held on August 28, 1978. Baker objected at the commencement of the hearing to the adequacy of the notice he received. At the hearing, Edward Fitzsimmons, an investigator with the Department of Law Enforcement, testified to several conversations with Baker and two visits he made to Baker's tack shop. Fitzsimmons testified that on January 19, 1978, he had a conversation with Baker. In response to his questions, Baker stated that he had obtained phenylbutazone ("bute") which he sold to his customers. Phenylbutazone is an anti-inflammatory medication administered to horses. Federal law restricts this drug to use by or on the order of a licensed veterinarian.

(21 C.F.R. §520.1720a (1981).) Fitzsimmons stated that on January 20, 1978, he reviewed Baker's sales records. Baker told the investigators that the cash sales receipts for "bute" were marked either "Vitamin BUT" or "Bt.P." Fitzsimmons testified that he and Agent McCoy searched the tack shop on January 25 and seized a box labeled Azium powder. Azium powder is a trade name for dexamethasone. Dexamethasone is used to treat inflammatory conditions in horses. Federal law also restricts the use of this drug to licensed veterinarians or on the order of a licensed veterinarian. (21 C.F.R. §520.540b (1981).) Another interview took place at the Illinois Bureau of Investigation's office in Belleville on January 26, 1978. Fitzsimmons testified that in the January 26 interview Baker said that he had obtained the "bute" from Dr. Morgan, a practicing veterinarian. He also stated that he sold 99 percent of his stock of McKay's injectables to two veterinarians and the remainder to track people. McKay's injectables are an anti-inflammatory medication for horses administered by injecting a needle into the horse.

James McCoy, an agent with the Illinois Division of Investigation, also testified. He testified that he and Fitzsimmons had a conversation with Baker on January 31, 1978, at Fairmont Park. On that occasion Baker gave his permission for McCoy and Fitzsimmons to search his warehouse and trailer. McCoy testified that a case of McKay's injectables was found.

Baker testified that he operated a tack shop and that as part of his operation he sold Azium, McKay's injectables and "bute." He also testified that he ordered Azium and "bute" on Dr. Morgan's account because the supplier could not sell directly to him since he was not a licensed pharmacist. Baker also stated that he did not believe there was anything wrong with his sale of Azium or "bute."

On November 16, 1978, the Racing Board entered its order affirming the stewards' 9-month suspension. The Board found that Baker had sold Azium powder, phenylbutazone tablets, McKay's injectables and combiotic injectables. The Board further found that Baker was not a licensed pharmacist or veterinarian. The Board concluded that Baker violated Harness Rule 21.5(b) by possessing injectables within the race track enclosure and Harness Rule 21.6 by possessing prescription drugs, Azium and phenylbutazone, without a prescription.

Baker subsequently filed a complaint for administrative review in the circuit court. The complaint alleged that plaintiff was not given adequate notice of the charges against him and that the findings of the Racing Board were against the manifest weight of the evidence. The circuit court, after a hearing, entered an order stating that the notice to plaintiff was insufficiently clear or specific to fully advise plaintiff of the charges against him.

Defendant appeals from this order, contending that the notice sent to plaintiff was sufficiently specific to afford him due process and that the decision of the Board is supported by the evidence.

■■■ The charges in administrative proceedings need not be drawn with the same precision required of pleadings in judicial actions. (*Kelly v. Police Board* (1975), 25 Ill. App. 3d 559, 323 N.E.2d 624.) They need only be sufficiently clear and specific to allow preparation of a defense. (*Kelly v. Police Board*; *Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33, 360 N.E.2d 536.) The test of the adequacy of notice is whether the party receiving the notice should have anticipated the possible effects of the hearing on the basis of the notice. *Hyon Waste Management Services, Inc. v. City of Chicago* (1977), 53 Ill. App. 3d 1013, 369 N.E.2d 179; *Department of Revenue v. Jamb Discount* (1973), 13 Ill. App. 3d 430, 301 N.E.2d 23.

In the instant case, the notice sent to plaintiff informed him that a hearing would be held regarding his violation of Harness Rules 21.5(b) and 21.6. The rules were set forth in full in the notice of hearing. The rules plaintiff was charged with violating were sufficiently narrow in scope and specific in coverage so as to advise plaintiff of the charges he would be required to defend.

Rule 21.5(b) prohibits the possession within the race track enclosure of any substance prepared for the purpose of being injected into a living being. Plaintiff stocked and sold McKay's injectables which he admittedly knew were administered to a horse by injection. Plaintiff could readily apprehend from the notice that he would be required to defend himself against the charge of possessing an injectable substance, McKay's injectables, in his tack shop in violation of Rule 21.5(b). Rule 21.6 prohibits the possession of any prescription drug within the race track enclosure without a prescription stating the specific dosage to be administered to the horse. Plaintiff testified that he asked to see a prescription before selling "bute" to a customer. He also testified that when he ordered the "bute" and Azium powder, he requested that it be billed to Dr. Morgan's account because the drug company would not sell directly to a person who was not a licensed pharmacist. Plaintiff was sufficiently informed by the notice that he would be required to defend himself against charges of possessing prescription drugs, "bute" and Azium powder within the race track enclosure without valid prescriptions.

The notice also cited Harness Rule 2.07 which indicated that these charges constituted grounds for denial of a license. At the bottom of the notice plaintiff was informed that failure to appear at the hearing might result in immediate suspension.

In *Hyon Waste Management Services, Inc.* and *Jamb Discount* the court found the notice inadequate because it failed to completely apprise

defendants as to the penalties which might result from the administrative proceeding. The notice in the instant case informed Baker that the charges constituted grounds for denying him a license and that his license could be denied or suspended as a result of the hearing, so he was fully informed of the possible consequences of the hearing.

■■ We conclude that the charges contained in the notice were sufficiently clear and specific to allow plaintiff to prepare a defense. Plaintiff was also fully apprised in the notice of the possible effects of the hearing. Moreover, plaintiff was afforded a complete *de novo* hearing before the Racing Board on the same charges subsequent to the hearing before the State stewards. Plaintiff, therefore, had a second opportunity to prepare a defense after becoming aware of the exact charges against him in the first hearing. Therefore, we conclude that the trial court erred in finding that the notice was insufficiently clear or specific to fully advise plaintiff of the charges against him.

Further, after having reviewed the record before us, we conclude that the evidence was sufficient to find plaintiff in violation of Harness Rules 21.5(b) and 21.6.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed.

Reversed.

KARNS and WELCH, JJ., concur.