OTTO DEMPSEY v. VIRGINIA DARE STORES, INC., A CORPORATION, AND VIRGINIA DARE STORES CORPORATION, A CORPORATION.—186 S. W. (2d) 217.

Kansas City Court of Appeals. January 22, 1945.

*Cornelius Roach, Daniel L. Brenner,* and *Ted Houx, Jr.,* for appellant.

356

*Lathrop, Crane, Reynolds, Sawyer & Mersereau,* and *Winston H. Woodson, Sam. D. Parker,* for respondents.

BLAND, P. J.—This is an action for damages for personal injuries. The appeal is from an order of the court refusing to set aside an involuntary nonsuit, taken by the plaintiff, when, at the conclusion of testimony on behalf of the plaintiff, the court marked defendants' requested peremptory instructions "Given".

The facts show that plaintiff, in the early part of 1941, purchased from the defendants, at one of their retail stores, in Kansas City, a lounging robe, called a "Fuzzy Wuzzy"; that "this robe was full length to the floor, fastened with a zipper all the way down the front, then had a belt tied around the front"; that the belt was of the same material as the robe; that at the first time that plaintiff had occasion to wear the robe it was consumed by fire; that plaintiff had taken a bath, put on her gown and the "Fuzzy Wuzzy" robe over it, sat in her bed, with a pillow to her back, with her feet on the bed, placed an ash tray on the bed, and lighted a cigarette; that she held the cigarette in her left hand and knocked the ashes therefrom into the ash tray, which she had placed on her right side; that she had knocked the ashes off of the cigarette about a half dozen times until it was consumed, at which time she put out the cigarette; that "and I was sure it was out and put the ash tray over and about that time, why, there was a flame that shot right up in my face from the right side"; that

the flame ran up the side of the lounging robe. "Q. And then what did you do? A. I jumped up and ran from the living room into the bathroom and tried to smother it out with the bath mat and by that time it was blazing more and more all the time and I thought, well, the only thing I could do was to get it off of me because I could not put it out, so I finally got the belt untied and stripped it down and stepped out of it and left it lying on the tile bathroom floor and went back into the living room, and then my gown was not blazing at all or nothing, but I had pulled my gown off and it just died right out"; that the fire scorched her gown but did not burn it.

Plaintiff further testified that she telephoned for a bell boy but there was a boy on the elevator, which was in front of her room; that the elevator boy had smelled smoke, had stopped the elevator, got off of the same and knocked on her door, before she had time to get a boy from downstairs, "and the robe at that time that I had dropped into the bathroom and just stepped out of and all just kept on flaming and *it was all burning when the boy came in.* Q. What was left? A. Nothing left, nothing only the zipper. The only thing you could find was the little part of the zipper that you take to pull down". (Italics ours.) The evidence shows that as a result of the fire plaintiff was severely burned.

Plaintiff further testified that the robe was "just like jersey on the inside and · . . . like an open fuz on the outside"; that it had a back of smooth jersey construction. There was other evidence that "It is a roughish material. I would call it a long-hair fabric, the yarn is brushed and rather curly. Q. Did it resemble a brushed wool? A. Yes, I would say that".

Plaintiff took the deposition of the president of defendants' corporations. He testified that in the summer or the fall of 1940 a fabric known as "Fuzzy Wuzzy" was very popular; that he purchased a number of "Fuzzy Wuzzy" robes from a reputable manufacturer for defendants' store in Kansas City, but that the defendants did not know of what material they were made; that it was not customary to inquire of the manufacturer as to such matters. Some corrections were made by the witness in his deposition before he signed it, but it was stipulated, at the trial, that were the stenographer who took the deposition present, he would testify that the witness stated, in the deposition before it was corrected, "Our buyers in buying know what is in a garment."

J. G. Hawthorne testified that he made a chemical analysis of the material in a "Fuzzy Wuzzy" robe indentical with the one worn by the plaintiff; that said robe was composed of viscose rayon; that there are several kinds of rayon having cellulose for their base; that cellulose is about the same thing, chemically, as cotton; that viscose rayon is a "sulphur compound that is known as cellulose xanthate; "that other kinds of rayon are nitor-cellulose, cellulose acetate, copper am-

monium and chardonnett; that each of these rayons is made up of a different compound of cellulose; that nitro-cellulose rayon "is very highly inflammable"; that in examining the rayon in the "Fuzzy Wuzzy" garment he found that it was almost completely combustible, the residue ash amounting to only 1.12 per cent; that if a flame is applied to the surface of this "Fuzzy Wuzzy" cloth it will ignite "and there will be a flame progress over the surface of the cloth, . . . fairly rapidly"; that "I found that the fiber would—that the fiber in this garment would burn completely and that the fuzzy portion of the garment could be readily ignited and that the flame produced rapidly traveled over the surface of the fabric;" that if the temperature was high enough a live spark would set the garment ablaze; that the brushed wool effect on the outside of the jersey base would influence the inflammability of the garment as "this wool-like surface is composed of very fine fibers and for that reason there is a very considerable amount of surface in the wool part of the garment, and since the fibers that make up the surface are very finely divided they are capable of burning rather rapidly and completely".

He further testified that the process of making viscose rayon was discovered in 1890 and since that time this kind of rayon has been manufactured into various textures and has been very generally used in the place of other fabrics in the making of clothing, pillow cases, sheets, etc.; that all clothing is inflammable; that the fuzziness in this particular garment would make it ignite more readily than would a base of harder finished fabric; that the flame would be inclined to spread more rapidly; that all one had to do to see the fuzziness was to look at it.

In his opening statement to the jury counsel for defendant stated: "It is like the old Santa Claus suits. Of course, Gentlemen, the evidence will show you that anybody knows that robe so constructed is highly inflammable and they may burn at anytime".

Plaintiff insists that the court erred in sustaining the demurrer to the evidence, for the reason, that defendants knew or by the exercise of ordinary care, should have known that the robe purchased from them by plaintiff was made of material which was highly inflammable, and which was inherently dangerous to be worn upon her person, and failed to warn plaintiff of its dangerous character.

It is well settled that a person who sells an article, which he knows or should know, is inherently dangerous to human life, limb or health, to another person who has no knowledge of its dangerous character, and fails to give notice thereof to the purchaser, is liable in damages to a third person, who while exercising due care, is injured by its use, or which should have been contemplated by the seller and that the danger is nonetheless inherent because it was brought into action by some external force. [Farley v. Edw. E. Farley & Co., 171 N. E. (Mass.) 639; Orr v. Shell Oil Co., 177 S. W. (2d) 608; Arnold

v. May Dept. Stores, 85 S. W. (2d) 748; Shroder v. Barron-Dady Motor Co., 111 S. W. (2d) 66, 71.]

Defendants insist that there was no duty upon them to notify plaintiff of the inflammability of the robe, for the reason, that the fuz was on the outside of the fabric and was plainly visible; that she testified that she saw it and knew it was there at the time she purchased and wore the robe; that there is no evidence that the material in the robe was any more inflammable than any other material used in clothing; that all persons know that material such as "fuzzy wuzzy" is highly inflammable; that, therefore, there was no latent dangerous condition shown, and that, aside from this, there is no evidence that defendants knew or could have known anything more about the construction or inflammability of the robe than plaintiff knew.

Plaintiff admitted that this "open" fuz was on the outside and was plainly visible to her, but she testified that she did not know that the qualities of the fuz were such as to make the robe highly inflammable, and that no one told her that it was.

However, plaintiff can not claim that she did not know what any ordinarily intelligent person would know by observing the material. It is not necessary for one selling dynamite or matches to notify the purchaser that the dynamite will explode or that the matches will take fire, for every one knows of these qualities inherent in these objects. Persons of ordinary intelligence also know that openly woven, fluffy and "fuzzy wuzzy" materials will ignite and burn more readily than ordinary cloth. There is no duty on the part of the seller of such material to notify the buyer of its inflammable qualities. While counsel for defendants, in his opening statement, admitted, in effect, that defendants knew that the material in question was highly inflammable, the word "highly" is a relative term. "Highly inflammable" ordinarily is taken to mean material that will more readily ignite and burn than ordinary inflammable material. The evidence shows, as every one knows, that even ordinary cloth is inflammable. The reference of counsel to the material in the "Fuzzy Wuzzy" robe, as being highly inflammable meant that it was of higher inflammability than ordinary cloth.

There is no question but that the robe in question was highly inflammable, in the light of this understanding of the term, and persons of ordinary intelligence would know of such quality inherent in the material upon observation. Therefore, plaintiff is in no position to claim that she did not know that the robe in question was more likely to ignite and burn than ordinary cloth and, therefore, of higher inflammability.

It will be thus seen that plaintiff was confronted with a very difficult problem of making a case of a duty to warn on the part of the defendants. We do not say that, under no circumstances, would the

seller of such an article of the general character as the robe in question, be excused from warning the buyer of its inflammable qualities if it is made of some latently inflammable material; but it would appear that there would be no duty to warn unless it was composed of material that was almost explosive in character. There is no evidence tending to show that it was of that quality.

There is no evidence that plaintiff was deceived as to the material of which the robe was made, whether of cotton, wool, rayon or other fabric, and there is a serious question as to whether there is any evidence tending to show that had the garment been made of cotton or wool, it would have been less inflammable. There is no comparison attempted to be made by the witness Hawthorne as to the inflammability of a "fuzzy wuzzy" garment made of viscose rayon and with one made of cotton, wool or like fabric. He seemed to stress the point that the inflammability of the garment was due to the fact that the wool-like surface of the garment was composed of fibers that were "finely divided" and capable of burning rather "rapidly and completely". In this connection, he said: "Well, it would be in the case of this particular fabric, the fuzziness would be the thing that would make it ignite more readily than would a piece of harder finished fabric".

We have examined Noone v. Fred Perlberg, Inc., 49 N. Y. S. (2d) 460, cited by the plaintiff. In that case the plaintiff was wearing an evening gown with a glazed double netted overskirt manufactured by the defendant. She was injured by the burning of the overskirt when it came in contact with a spark from tobacco that was being smoked. The netted overskirt had been stiffened with a glazed and shiny substance, which substance, upon examination, was found to be nitro-cellulose sizing. It was shown that nitro-cellulose is "guncotton, a chemical form of pyroxylin, the basis of gunpowder". The evidence showed that the whole netting was consumed "almost instaneously in a flash of flame". The backslip of the dress was practically untouched by fire.

The Noone case differs from this, in that, the rayon involved in that case was nitro-cellulose which, the evidence in this case shows, is *very* highly inflammable. There is no evidence in this case that viscose rayon, the type of rayon involved in the case at bar, is of such inflammability. In that case the netting was consumed almost instantly in a flash of flame, whereas, in the case at bar, there was no evidence as to how long the robe burned before plaintiff noticed it was on fire. However, in connection with what occurred when the robe burned, the evidence does show that the material was highly inflammable, although, it did not burn with a rapidity that could be compared to an explosion, for the reason, that plaintiff had time to arise from her bed, go into the bathroom and try to smother the flames with a bath mat. She untied the belt, took the robe off and

the elevator boy had time to notice an odor of smoke, stop the elevator, knock and enter the room before the robe, exclusive of the meal portion, was entirely consumed.

However, even if it could be said that the robe was composed of a material that had qualities of inflammability that were latent and of such character that defendants should have advised plaintiff thereof, if they knew of it, there is no evidence tending to show that defendants knew of such condition, or should have known of it. [See Schroder v. Barron-Dady Motor Co., *supra.*] In this connection plaintiff relies upon what defendants' counsel said in his opening statement, to the effect, that the defendants, as well as all others, knew that the robe was highly inflammable. Plaintiff says that this constitutes an admission on the part of the defendants of this fact. However, the admission was no more than what all persons of average intelligence should know of such material and with which knowledge the plaintiff is charged. If the statement of the president of the defendants, "Our buyers, in buying know what is in a garment", made at the time of the taking of his deposition, and before it was corrected, can be said to constitute an admission on the part of the defendant, it constitutes no admission further than that defendants knew that the garment was composed of viscose rayon and, as before stated, the evidence is insufficient to show that viscose rayon has such qualities of inflammability as to require notice thereof on the part of the defendants to the buyer of such material.

The judgment is affirmed. All concur.