Brenda **MORRISON** and Trisha Morrison, Plaintiffs and Appellants,

v.

**GRAND FORKS HOUSING AUTHORITY**, Defendant,

and

**Honeywell Corporation**, Defendant and Appellee.

Civ. No. 880150.

Supreme Court of North Dakota.

Feb. 10, 1989.

es an obligation of good faith in its performance or enforcement."

Kevin B. Spaeth (argued), Grand Forks, for plaintiffs and appellants. Appearance by Ward Johnson.

Morley & Morley, Ltd., Grand Forks, for defendant and appellee; argued by Patrick R. Morley.

ERICKSTAD, Chief Justice.

Brenda and Trisha Morrison (Morrisons) were injured in a fire in their apartment on February 29, 1984. As a result, Morrisons commenced an action against the Grand Forks Housing Authority and the Honeywell Corporation. A settlement was concluded involving the defendant, Grand Forks Housing Authority, and the matter was dismissed with prejudice against the Housing Authority. Honeywell made a motion for summary judgment which the trial court granted. Morrisons bring this appeal. We affirm.

At the time of the fire, one battery-operated smoke detector, manufactured by Honeywell, was installed in the apartment. On the morning of the fire, the smoke detector failed to sound because there was no battery in it. Brenda had removed the battery, either to use in a transistor radio or because of the "chirping" the low battery signal emitted, but had forgotten to replace it.[1]

Brenda and her daughter Trisha were severely burned in the fire. As a result of their injuries, they brought suit against Honeywell, claiming that Honeywell is liable for failing to provide a warning that the smoke detector would not operate without a battery and for manufacturing a battery-operated smoke detector without an alternating current backup. The district court granted Honeywell's motion for summary judgment on December 11, 1987.

On appeal, Morrisons allege that Honeywell is liable on the basis of both products (strict) liability and negligence theories. Morrisons apparently argue that the smoke detector was defective because it failed to sound at the time of the fire, notwithstanding the fact that there was no battery in the detector.

■ In order to recover under the doctrine of strict liability in tort, the plaintiff must prove that there was a "defect" in the defendant's product.[2] What constitutes a defect has generally not been susceptible of any general definition and is defined on a case-by-case basis. *Jagmin v. Simonds Abrasive Co.*, 61 Wis.2d 60, 211 N.W.2d 810 (1973); *Products Liability*, 63 Am.Jur. 2d § 544 (1984). Courts have used various language to describe what makes a product defective, generally incorporating comments g[3], h[4], and i[5] of section 402A, Restatement (Second) Torts (1965), in the definition. *See Kleve v. General Motors Corp.*, 210 N.W.2d 568, 571 (Iowa 1973) (phrase "defective condition unreasonably dangerous to the user or consumer" means the defect in a product not contemplated by user or consumer which would be unreasonably dangerous to him in the normal and innocent use or consumption thereof); *Fredericks v. General Motors Corp.*, 411 Mich. 712, 311 N.W.2d 725 (1981) (product is defective if it is not reasonably safe for

---

1. There is no dispute that Brenda Morrison did in fact take the battery out of the smoke detector and did not replace it. There is some dispute, however, as to the reason she removed it.

2. "Strict liability in tort cannot attach unless there is proof of a defect in the product...." *Stillwell v. Cincinnati, Inc.*, 336 N.W.2d 618, 622 (N.D.1983); *Products Liability*, 63 Am.Jur.2d § 544 (1984).

3. Restatement (Second) Torts, § 402A, comment g reads in pertinent part: "The rule ... applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him."

4. Restatement (Second) Torts, § 402A, comment h reads in pertinent part: "A product is not in a defective condition when it is safe for normal handling and consumption."

5. Restatement (Second) Torts, § 402A, comment i reads in pertinent part: "The rule ... applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer.... The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

its foreseeable uses); *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149 (Minn.1982) (product is defective if it fails to perform reasonably, adequately and safely, the normal, anticipated or specified use to which the manufacturer intends that it be put, and it is unreasonably dangerous to the plaintiff); *Farr v. Armstrong Rubber Co.,* 288 Minn. 83, 179 N.W.2d 64 (1970) ("defect" is any condition not contemplated by the user which makes the product unreasonably dangerous to him; a product is not defective when it is safe for normal handling and consumption).

■ The smoke detector at issue was a battery-operated detector. Morrisons acceded that the detector had gone off three or four times, usually when toast was being made. Every time the detector went off, Brenda opened the cover and took the battery out long enough for the smoke to clear out of the room. She then replaced the battery. When the battery wore out, and the detector began chirping, Brenda took the battery out of the detector and failed to replace it with a new battery.

It is apparent from our review of the record that the smoke detector in Morrisons' apartment did work properly, at least prior to the fire, because it alerted Morrisons to the burning toast on several occasions. It is also apparent that Brenda knew that this particular detector was powered by a battery, as indicated by the fact that, in order to stop the detector alarm, she removed the battery. Testimony from a third party indicated that Brenda had also used the detector battery to power a transistor radio, further indicating that Brenda had knowledge that a battery provided the power source for the detector.

The battery-powered smoke detector performed adequately and posed no unreasonable danger beyond the contemplation of the ordinary user, or that of Brenda. Under these circumstances, we conclude that reasonable persons could not find the detector to be defective. Therefore, the trial court did not err in granting summary judgment.

Notwithstanding the above conclusion, we will also consider whether or not Honeywell was negligent because negligence and strict liability theories of recovery are intertwined in a failure-to-warn case.

Morrisons claim that the lack of a more explicit warning renders this detector defective. They argue that Honeywell is liable on the basis of both strict liability and negligence theories; that under either doctrine, Honeywell had a duty to warn Morrisons that the detector would not operate without a battery.

■ We have said that recovery sought under a negligent failure-to-warn theory and recovery sought under a strict liability theory of marketing a product which is defective and unreasonably dangerous because it is not accompanied by adequate warnings are two separate and distinct theories of recovery. *Mauch v. Manufacturers Sales & Service, Inc.,* 345 N.W.2d 338, 345 (N.D.1984). Under a negligence theory, the question is whether or not the conduct of the manufacturer or seller in providing a certain warning with its product, or in providing no warning at all, falls above or below the standard of reasonable care. *Id.* at 346. Under a strict liability theory, the question is whether or not the warnings, if any, which accompany a product are adequate to render the product not unreasonably dangerous to the ordinary user of it. *Id.*

Under either theory of recovery, negligence or strict liability, other courts have held that the duty to warn does not attach when the danger or potentiality of danger is obvious or is known to the injured person.[6] *See Fanning v. LeMay,* 38 Ill.2d 209, 230 N.E.2d 182 (1967) (no duty to warn that soles of shoes became slippery when wet because it is a matter of common knowledge that shoes are more likely to slip when wet than when dry); *Fisher v. Johnson Milk Co.,* 383 Mich. 158, 174 N.W.2d

---

6. Restatement (Second) Torts, § 402(a), comment j reads in pertinent part: "[A] seller is not required to warn with respect to products, ... when the danger, or potentiality of danger, is generally known and recognized."

752 (1970) (operator of milk business, having sold a wire milk carrier to plaintiff, could not be held liable for having failed to warn plaintiff of the danger of carrying the bottles in the carrier on an icy day, since manner of carrier's construction, how bottles would rest in it, and what might happen if it were dropped, upright, on a hard surface below, with possibility that contained bottles might break, was plain enough to be seen by anyone); *Nabkey v. Jack Loeks Enterprises, Inc.,* 376 Mich. 397, 137 N.W.2d 132 (1965) (woman injured while jumping on trampoline not entitled to recover from operator; nothing instructor could have said or done which was not readily apparent to plaintiff, or which was not under her sole control); *Antcliff v. State Employees Credit Union,* 95 Mich. App. 224, 290 N.W.2d 420 (1980) aff'd 414 Mich. 624, 327 N.W.2d 814 (1982) (no duty to instruct purchasers and users of scaffolding products in proper rigging techniques because danger of using inadequate outriggers was obvious or known to the user); *Dempsey v. Virginia Dare Stores,* 239 Mo.App. 355, 186 S.W.2d 217 (1945) (no duty on part of the seller of "fuzzy wuzzy" materials to notify buyer of its inflammable qualities because persons of ordinary intelligence know that openly woven, fluffy and "fuzzy wuzzy" materials will ignite and burn more readily than ordinary cloth); *Berry v. Eckhardt Porsche Audi, Inc.,* 578 P.2d 1195 (Okla.1978) (no duty to warn of the dangers of nonuse of seat belts, particularly where plaintiff removed the buzzer warning when seat belt was not fastened). Annot. *Products Liability—Failure to Warn,* 53 A.L.R.3d 239, 257 (1973); Annot. *Products Liability: Duty of Manufacturer or Seller of Component Part Incorporated in Another Product to Warn of Dangers,* 39 A.L.R.4th 6, 44 (1985); 63

Am.Jur.2d Products Liability §§ 341, 342 (1984).

We have said that whether or not a duty exists is generally a preliminary question of law for the court. *Barsness v. General Diesel & Equipment Co.,* 383 N.W.2d 840, 843 (N.D.1986). We recognize that if the existence of a duty depends upon factual determinations, resolution of such factual disputes is for the trier of fact. *Id.* However, where the facts are such that reasonable minds could not differ, the court may decide, as a matter of law, whether or not the manufacturer or seller has a duty to warn. *See Complaint of Diehl,* 610 F.Supp. 223, 227 (D. Idaho 1985) (as a matter of law, no duty to warn users of sailboat with aluminum mast of danger posed by power lines); *Smith v. Hub Mfg., Inc.,* 634 F.Supp. 1505, 1508 (N.D.N.Y.1986) (obviousness of danger is question for court; no duty to warn of danger swimming pool presents to small children); *Brown v. Sears, Roebuck & Co.,* 136 Ariz. 556, 562, 667 P.2d 750, 756 (App. 1983) (as a matter of law, no duty to warn adult that if an electrical extension cord is cut or frayed a danger of electrical shock is created); *Ragsdale v. K–Mart, Corp.,* 468 N.E.2d 524, 527 (Ind.App. 1 Dist.1984) (as a matter of law, no duty to warn of danger of placing hand under hood of mower and near rotating lawn mower blade); and *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690 (Tenn.1984) (as a matter of law, no duty to warn of danger of drinking alcohol).

The trial court concluded, after viewing the evidence, that "here it was obvious and a matter of knowledge to Brenda that the battery powered smoke detector would not operate without a battery, and ... Brenda Morrison had reason to know that the detector was battery powered...." [7]

---

**7.** In oral argument, counsel for Morrisons relied on *Stillwell v. Cincinnati Inc.,* 336 N.W.2d 618 (N.D.1983), as supporting his position. There the plaintiff was injured while using a press brake. After a bench trial, the action was dismissed with prejudice. The plaintiff appealed, claiming, among other things, that the court's failure to find that the manufacturer failed to adequately warn the plaintiff of the

danger inherent in the operation of the press brake constituted error.

We said: "the trial court had previously found that there were sufficient warning signs on the press brake so as to preclude the press brake from being defective because of a lack of warning and, additionally, concluded there was no duty to warn when the danger was obvious to the user. Because the trial court initially found that the warning signs were sufficient, we do

We have recognized that there is no valid reason for automatic preclusion of liability based *solely* upon "obviousness" of danger in an action founded upon the risk-spreading concept of strict liability in tort which is intended to burden the manufacturers of defectively dangerous products with special responsibilities and potential financial liabilities for accidental injuries. *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530, 537 (N.D.1977).

Notwithstanding having said that the "obviousness" of a danger does not automatically preclude liability under the doctrine of strict liability, we quoted in *Olson* from *Dorsey v. Yoder Company*, 331 F.Supp. 753, 759 (E.D.P.1971) the complete text being:

"It does not follow ... that the manufacturer of every obviously defective or dangerous product owes an automatic duty to an injured party. Although a knife qualifies as an obviously dangerous instrumentality, a manufacturer need not guard against the danger that it presents. '[Nor is it] necessary to tell a zookeeper to keep his head out of the hippopotamus' mouth.' *Bartkewich v Billinger, supra* [432 Pa. 351] at 356, 247 A.2d [603] at 606 [1968]. See also 2 Harper and James, The Law of Torts, § 28.6 (1956 ed). The point is that to preclude absurd results the obviousness of the danger must constitute but *one* of the factors that determines whether the danger is unreasonable." [Emphasis in original.]

◼ Under the circumstances of this case the trial court did *not* find, nor do we, this battery-powered smoke detector to be obviously defective or dangerous. We consider it obviously dangerous for a consumer to rely on a battery-powered smoke detector to alert one to fire when the consumer knows that the detector does not contain a battery.

◼ Under a strict liability theory, Morrisons further claim that the lack of a warning specifically stating that the detector would not work without a battery rendered the detector unreasonably dangerous. We have recognized that the doctrine of strict liability in tort,[8] as pertains to products liability, imposes liability on the manufacturer or seller of a product, or both, for injuries sustained as a result of a defective condition, unreasonably dangerous to a consumer or his property. *Kaufman v. Meditec, Inc.*, 353 N.W.2d 297 (N.D.1984).

In *Wilson v. General Motors Corp.*, 311 N.W.2d 10, 15 (N.D.1981), we recognized that "[t]he requirement of unreasonable danger is an integral part of the strict liability in tort doctrine in North Dakota." *See Kaufman, supra* at 300. "Unreasonably dangerous" is defined in Chapter 28–01.1, N.D.C.C., the Products Liability Act, at section 28–01.1–05(2) to mean that:

"[T]he product was dangerous to an extent beyond which would be contemplated by the *ordinary and prudent buyer, consumer, or user* of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses, together with *any actual knowledge, training, or experience possessed by that particular buyer, user, or consumer.*" [Emphasis added.]

Our review of the record is in accordance with the opinion of the trial court, that:

"[B]ecause here it was obvious and a matter of knowledge to Brenda that the battery powered smoke detector would not operate without a battery, and because Brenda Morrison had reason to

---

not believe it is necessary to consider the additional statements by the trial court concerning the open and obvious danger doctrine." *Stillwell*, 336 N.W.2d at 624. We were not left with a definite and firm conviction that a mistake had been made and affirmed the judgment of the district court.

**8.** In order to recover under the doctrine of strict liability, the plaintiff must show by a preponderance of the evidence that the product was defective in design or manufacture; that the defect rendered the product unreasonably dangerous to the consumer; that the defect existed when the product left the manufacturer; that the product was expected to and did reach the consumer without substantial change in its condition; and that the defect was a proximate cause of the plaintiff's injuries. *Kaufman v. Meditec, Inc.*, 353 N.W.2d 297, 300 (N.D.1984).

know that the detector was battery powered, the product was not unreasonably dangerous because no outright warning was not given to this effect."

Under a negligence theory, Morrisons argue that Honeywell had a duty to warn against the foreseeable misuse of its detectors; that it could reasonably anticipate consumers removing, and failing to replace, the battery. They claim that the instructions contained inside the smoke detector were inadequate to inform a consumer that the detector required a battery to operate and also did not warn of the danger of removing the battery and leaving it out.

 We have recognized that a product may be defective if the manufacturer or seller has reason to anticipate a danger from the use of the product and fails to give an appropriate warning. *Andersen v. Teamsters Local 116 Bldg. Club, Inc.*, 347 N.W.2d 309 (N.D.1984).[9] We have said that "what is generally described as a duty to warn is actually two duties: one is to give adequate instructions for safe use, and the other is to give a warning as to dangers inherent in improper use." *Seibel v. Symons Corp.*, 221 N.W.2d 50, 54–55 (N.D.1974). Furthermore, sections 28–01.-1–06(2)[10] and 28–01.1–02(1)(d), N.D.C.C.,[11] recognize that the failure to give proper instructions or to adequately warn are grounds for a cause of action in a products liability matter.[12]

We have said that the question of whether or not the injury was one that could

---

**9.** We have said that in products liability actions, the manufacturer's liability is not necessarily eliminated upon the fact-finder's determination that the product was not defective or unreasonably dangerous. The manufacturer of a product can be held liable even though the product itself is not defective or unreasonably dangerous if the injuries were sustained as a result of misuse of the product because the instructions or directions were not adequate or the warnings were not properly given. *Andersen v. Teamsters Local 116 Building Club, Inc.*, 347 N.W.2d 309, 311 (N.D.1984). In *Andersen*, the plaintiff was injured upon slipping and falling on a dance floor that had been sprinkled with dance wax. The jury was given a special verdict form in which it was asked if Hysan's [the manufacturer's] dance floor wax was a defective and unreasonably dangerous product, and the jury answered "[n]o." However, in response to the question if Hysan was negligent, the jury answered "[y]es." We determined that:

"the special interrogatory asking if the product was defective and unreasonably dangerous was not necessarily irreconcilable with the question asking if the manufacturer was negligent. The jury could well have considered the second question, 'Was the Defendant Hysan negligent?' to mean: Did Hysan fail to provide appropriate directions and instructions and did Hysan fail to warn? The record, contrary to Hysan's contention, reflects that Hysan did not give adequate warnings regarding the use of the product." *Andersen*, 347 N.W.2d at 314.

We find *Andersen* to be distinguishable from the instant case because Honeywell, unlike Hysan, provided adequate instructions, as a matter of law, informing the ordinary and prudent user that the detector would not work without a battery.

**10.** Section 28–01.1–06(2), N.D.C.C., reads:

"*Definitions applicable to sections 28–01.1–06, 28–01.1–06.1, and 28–01.1–07.* For purposes of this section and sections 28–01.1–06.1 and 28–01.1–07:

\* \* \* \* \* \*

"2. 'Product liability action' means any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product."

**11.** Section 28–01.1–02(1)(d), N.D.C.C., reads in pertinent part:

"*Statute of limitation.*
"1. There shall be no recovery of damages for personal injury, death, or damage to property caused by a defective product, except as provided in subsections 4 and 5, unless ... where that action is based upon, or arises out of, any of the following:

\* \* \* \* \* \*

"c. Failure to warn.
"d. Failure to properly instruct in the use of a product."

Incidentally, the statute of repose contained in part 1 and deleted from the above reference was held to be unconstitutional in *Hanson v. Williams County*, 389 N.W.2d 319 (N.D.1986), by a majority of this Court.

**12.** In *Johnson v. American Motors Corporation*, 225 N.W.2d 57 (N.D.1974), this Court expressly adopted Restatement (Second) Torts, § 402A which reads:

have reasonably been anticipated is a question of fact for the jury. *Kirton v. Williams Elec. Co-op. Inc.*, 265 N.W.2d 702 (N.D.1978). That is not to say, however, that a court may not decide that issue as a matter of law where the facts are such that reasonable men could not differ. *Kirton, supra* at 705.

The Honeywell smoke detector at issue in this case contained the following pertinent instructions:

"MAINTENANCE

"* AFTER REPLACING BATTERY TEST THE DETECTOR BY PRESSING TEST BUTTON

\* \* \* \* \* \*

"WHEN DETECTOR CHIRPS about twice a minute, REPLACE BATTERY.

"WARNING: Use ALKALINE battery only: Mallory MN 1604. Eveready 522.

"BE SURE the word ALKALINE is on battery.

"Do NOT use carbon zinc or other battery. If non-approved battery is used

unit will become INOPERATIVE. No battery warning signal will be given."

A plain reading of these instructions clearly indicates that the detector will work only with the proper type of battery, and was therefore powered by a battery. Even though the instructions do not explicitly state that the detector will not work without a battery, the implication appears obvious. Furthermore, these instructions were inside the cover of the smoke detector, which cover Brenda Morrison had removed several times, but she concedes that she did not read the instructions. We agree that a "seller is entitled to have his due warnings and instructions followed; and when they are disregarded, and injury results, he is not liable." *Erickson v. Monarch Industries, Inc.*, 216 Neb. 875, 347 N.W.2d 99, 109 (1984), citing *Edwards v. Sears, Roebuck and Company*, 512 F.2d 276, 289 (5th Cir.1975); *see* Restatement (Second) Torts, § 402A, comment j.

■ Under these circumstances, we conclude that reasonable persons could not

"§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

'(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

'(a) the seller is engaged in the business of selling such a product, and

'(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

'(2) The rule stated in Subsection (1) applies although

'(a) the seller has exercised all possible care in the preparation and sale of his product, and

'(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.' "

In *Johnson,* the plaintiff was killed when the Rambler she was driving was struck from behind. Immediately upon impact, the Rambler burst into flames and its occupants incinerated. Family members of the decedents brought actions against the manufacturer of the car, alleging that the deaths were due to AMC's negligent design of the vehicle. Applying section 402A, this Court reversed the district court grant of summary judgment in favor of AMC and remanded for trial.

We again applied section 402A in *Olson v. A.W. Chesterton Company,* 256 N.W.2d 530 (N.D.1977), and recognized that under section

402A, one who manufactures or sells a product has a duty to warn of dangers inherent in its intended use and also to warn of dangers involved in a use which can be reasonably anticipated. Therefore, a manufacturer or seller can be held liable under a products-liability theory for selling a product which, although meeting every requirement for its designed utility and although properly manufactured, is marketed without adequate warnings to make the product free from unreasonable danger to the user.

In *Olson,* the plaintiff was injured while applying defendant's belt dressing to the pinch point between the conveyor belt and power pulley of the conveyor belt system. The can of belt dressing directed the user to "Apply only to *running* belts. Pour *slowly* through applicator spout." However, no warnings were given as to the consequences of improper use. The plaintiff squirted the dressing on the stalled belt, and in the process, had his hand pushed into the pinch point, resulting in serious injuries. The jury returned a verdict in favor of the plaintiff. On appeal, we determined that the jury could have found that the plaintiff's use or misuse of the product was foreseeable and therefore the manufacturer had a duty to warn against such use.

After this Court adopted Restatement (Second) Torts, § 402A, the North Dakota Legislature passed the North Dakota Products Liability Act, now codified in Chapter 28–01.1, N.D.C.C. Products liability law, therefore, is now governed by judicial application and interpretation of § 402A and Chapter 28–01.1.

find that Honeywell could reasonably have anticipated that a consumer would misuse its detector by removing, and failing to replace, the battery despite the instructions provided with the detector. Therefore, Honeywell was not negligent for failing to provide a more specific warning.

■ The trial court granted summary judgment in favor of Honeywell pursuant to Rule 56 of the North Dakota Rules of Civil Procedure which provides that:

> "Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

Under Rule 56, the movant has the burden of showing that there is no genuine issue of material fact and the party opposing the motion will be given all favorable inferences which may reasonably be drawn from the evidence. *Wolff v. Light,* 156 N.W.2d 175, 178 (N.D.1968). However, when reasonable men can draw but one conclusion from the facts presented, questions of negligence become a matter of law for the court to decide. *See Mikkelson v. Risovi,* 141 N.W.2d 150 (N.D.1966).

Our review of the record, in the light most favorable to Morrisons, leads us to the conclusion that there are no genuine issues of material fact which preclude summary judgment in favor of Honeywell. Reasonable persons could not find a defect in this battery-powered smoke detector. Moreover, the danger of removing the battery from a battery-powered smoke detector, and leaving it out, is, as a matter of law, obvious to the reasonable and prudent user of such smoke detector. Furthermore, the instructions contained inside the detector were adequate and did not render the detector unreasonably dangerous. Additionally, Brenda knew that this particular detector did not work without a battery. It is our view, under the facts of this case, consistent with the conclusions of the trial court, that reasonable persons could only conclude that Honeywell had no duty to warn Morrisons that the battery-powered

smoke detector would not operate without a battery. We conclude, therefore, that under both strict liability and negligence theories of recovery, summary judgment of dismissal was appropriate. The judgment of the district court is affirmed with costs on appeal to Honeywell.

GIERKE, VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.